IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOSEPH EDMOND and CYNTHIA G. EDMOND, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO. 5:08-CV-56 (MTT) ) |
| ENGELHARD CORPORATION n/k/a BASF CATALYSTS, LLC, | ) ) ) |
| Defendant. | ) ) |

## ORDER

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment (Doc. 36) (the "Plaintiffs' Motion") and the Defendant's Motion for Summary Judgment (Doc. 40) (the "Defendant's Motion") (collectively, the "Motions"). The Motions involve nearly identical issues regarding the proper interpretation of the Settlement Agreement between Joseph Edmond and Engelhard Corporation that disposed of a previous lawsuit between the parties.

## I. FACTUAL BACKGROUND

The facts are almost entirely undisputed. Plaintiff Joseph Edmond was hired by Engelhard Corporation[1] in July 1977. In December 1999, Edmond, while working as a water truck driver, suffered a disabling back injury. Edmond applied for short term disability benefits ("STD"); he was approved and received benefits for 26 weeks (until July 2000), the maximum duration for STD benefits. After his STD benefits expired, Edmond transitioned into Engelhard's Long Term Disability ("LTD") plan. The LTD plan was administered and insured by UNUM Life Insurance Company of America ("UNUM").

---
[1] Engelhard Corporation is now known as BASF Catalysts, LLC.

Because Edmond was eligible for benefits under the LTD plan, he was also entitled to participate in Engelhard's other benefit programs, which meant that Engelhard provided Edmond with medical coverage and other benefits, including pension benefits.

In December 2001, UNUM determined that Edmond was no longer disabled and therefore was not entitled to benefits under the LTD plan. Because he was no longer eligible to receive LTD benefits, Edmond was no longer entitled to participate in Engelhard's other benefit plans. Therefore, Engelhard ceased providing medical, pension and other benefits to Edmond.

In May 2003, Edmond filed suit ("Lawsuit I") in the Northern District of Georgia against UNUM and Engelhard, among others, for improper termination of his benefits. After Engelhard moved to dismiss, but before Edmond responded to the motion, Edmond and Engelhard agreed to a separate settlement of Edmond's claims against Engelhard in January 2004 (the "Engelhard Settlement" or the "Engelhard Settlement Agreement"). Under the terms of this settlement, any obligation Engelhard had was contingent on the result of the continuing litigation against UNUM and the remaining Lawsuit I defendants. Engelhard would only be liable to provide benefits if the other defendants became liable to Edmond. According to the Engelhard Settlement Agreement:

> The reinstatement of medical, dental, vision and pension accrual benefits [by Engelhard] shall occur (a) if there is any finding of entitlement to LTD benefits in [Lawsuit I] for any period of time whether such finding is made by a court, magistrate, mediator, arbitrator or other third party, *OR* (b) if

the Lawsuit is resolved by a settlement with any of the other named defendants.

As Edmond later reached a settlement with the other Defendants (the "UNUM Settlement"), (b) was applicable.

In the event of a settlement with the other Lawsuit I defendants, the Engelhard Settlement Agreement provided two alternatives to determine the benefits duration, or the amount of time Engelhard would have to provide employee benefits to Edmond. If a period of time was specified in what would become the UNUM Settlement Agreement, "then the employee benefits shall be reinstated by the Engelhard [sic] for the period of time that the settlement reflects entitlement to such benefits." Or,

> . . . in the event of a settlement for a lump sum payment without the assumption of liability by any of the parties and without an agreement of entitlement to any period of disability benefits then ENGELHARD shall reinstate the aforementioned employee benefits from the date of the settlement forward for the number of months equal to the total amount of the settlement paid by any of the defendants cumulatively divided by the monthly benefit amount to which EDMOND would have been entitled to [sic] under the LTD Plan had benefits not been terminated.

In June 2004, Edmond settled his claims with UNUM and the remaining Lawsuit I defendants. According to the UNUM Settlement Agreement, Edmond settled his claim for a total of $65,000—$39,000 to be payable to Edmond for his claims for disability benefits from December 2001 to November 2023, and $26,000 payable to Edmond's

Lawsuit I attorney. Under the Engelhard Settlement Agreement, therefore, Edmond's settlement with UNUM was a lump sum settlement.

Pursuant to its interpretation of the Settlement Agreement, Engelhard notified Edmond that it would reinstate his benefits for 38 months, from June 2004 (the date of the UNUM Settlement) through August 2007. Engelhard claimed to have reached the figure of 38 months by dividing the lump sum of $65,000 by "the monthly benefit amount to which Edmond would have been entitled under the LTD Plan had benefits not been terminated," which Engelhard calculated to be $1,724.32. This amount was the amount that Edmond had received from UNUM under the LTD plan until his benefits were terminated.

Edmond disputes Engelhard's calculations and the 38 month result. According to Edmond, Engelhard had used the incorrect lump sum amount and the incorrect monthly benefit amount to calculate the duration of benefits. According to Edmond, the correct lump sum to use would be the $39,000 he actually received, not the $65,000 total figure which included attorney's fees payable directly to Edmond's attorney. Most importantly, though, Edmond disputed Engelhard's use of $1,724.32 as the monthly benefit amount. According to Edmond, the monthly benefit amount could only be determined by reference to the LTD plan, which provided a method for determining the monthly benefit under the plan.

Under the LTD plan, the monthly benefit is to be calculated as follows:

> To figure the amount of monthly benefit:
>
> 1. Take the lesser of:
>
>    a. 60% of the insured's basic monthly earnings; or
>
>    b. the amount of the maximum monthly benefit

shown in the policy specifications; and

    2. Deduct other income benefits, shown below, from this amount.

Here, "monthly benefit," "basic monthly earnings," and "other income benefits" are defined terms. "Monthly benefit" means the amount payable by Engelhard to the disabled insured. "Basic monthly earnings" means the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins; in this case Edmond's basic monthly earnings were $2,873.86. "Other income benefits" includes other disability benefits, including Social Security Disability Insurance ("SSDI"). In July 2002, in response to an application for benefits by Edmond, the Social Security Administration ("SSA") determined that he was eligible for SSDI retroactive to March 2000, and that his monthly benefit would be $1,773.

Using the LTD plan's method for calculating the monthly benefit, Edmond's monthly benefit would be $172.43. First, $1,724.32, which is 60% of Edmond's basic monthly earnings, is less than $2,100.00, which is Edmond's "maximum monthly benefit." Next, Edmond's SSDI payment amount of $1,773, when subtracted from $1,724.32, equals -$48.68, which is less than both $172.43 (which is 10% of 60% of Edmond's basic monthly earnings) and $100. Therefore, according to the LTD plan, $172.43 is Edmond's monthly benefit as that figure is greater than $100. Dividing the lump sum by this figure, Edmond would be entitled to medical coverage and pension benefits for 226 months (again, using the lump sum or $39,000).

In further support of using the LTD plan's monthly benefit calculation, Edmond refers to the LTD offset. Under the LTD plan, UNUM was allowed to estimate SSDI benefits "even if such benefits: 1. have not been awarded, and 2. have not been denied,

or 3. have been denied and the denial is being appealed," and to deduct those estimated benefits from the monthly benefit. In order to prevent such a reduction, Edmond signed a reimbursement agreement in which Edmond agreed to repay UNUM any overpayment caused by an award of SSDI benefits. Therefore, Edmond received $1,724.32 prior to the termination of his benefits only because of this agreement, otherwise, he may well have been paid a $172.43 monthly benefit. The point of this argument is that Engelhard's figure of $1,724.32 is a false figure in that Edmond only received that amount because he agreed to reimburse UNUM if he later received SSDI payments, otherwise UNUM could have drastically lowered his monthly benefit by estimating his SSDI amount and reducing his monthly benefit accordingly.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. *Id.* at 254-255, 106 S.Ct. at 2513. The Court may not, however, make credibility determinations or weigh the evidence. *Id.* at 255, 106 S.Ct. at 2513. Again, the material facts here are undisputed.

**B.     Settlement Agreement**

1.     Issues Presented

The overarching issue in this case is for how many months must Engelhard provide employee benefits to Edmond under the Engelhard Settlement Agreement. The resolution of this issue requires interpretation of a provision in the Engelhard Settlement Agreement. That provision reads as follows:

> . . . in the event of a settlement for a lump sum payment without the assumption of liability by any of the parties and without an agreement of entitlement to any period of disability benefits then ENGELHARD shall reinstate the aforementioned employee benefits from the date of the settlement forward for the number of months equal to the total amount of the settlement paid by any of the defendants cumulatively divided by the monthly benefit amount to which EDMOND would have been entitled to [sic] under the LTD Plan had benefits not been terminated.

This provision raises two main issues, each with attendant sub-issues. The first is what law should apply, and what does that law require? The second issue is what does the disputed language mean? Specifically, first, from when must Engelhard provide benefits? Second, in determining how long Engelhard must provide benefits, is the dividend the total lump sum of $65,000, or only the portion to which Edmond is entitled, i.e., $39,000? And third, how is "monthly benefit amount" to be determined?

2. Choice of Law

Before turning to the language at issue, the Court must determine what law to apply. According to its terms, the Engelhard Settlement Agreement is governed by law of the state of Georgia. Under Georgia law, "A release or settlement agreement is a contract subject to construction by the court." *Flagg Energy Dev. Corp. v. General Motors Corp.*, 223 Ga. App. 259, 260, 477 S.E.2d 402, 404 (1996). "Initially, the construction of the contract is a question of law for the court. . . . [I]f no ambiguity appears, the . . . court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction." *Fulton Greens LP v. City of Alpharetta*, 272 Ga. App. 459, 462, 612 S.E.2d 491, 494 (2005). "Where the terms of a contract are unambiguous, the court must enforce it literally, even if one party contends that he understood the contract to mean something else." *Atlanta Multispecialty Surgical Assoc.v. DeKalb Medical Center, Inc.*, 273 Ga. App. 355, 356, 615 s.E.2d 166, 168 (2005). "Contract language is unambiguous if it is capable of only one reasonable interpretation." *DS Ameri Constr. Co. v. Simpson*, 271 Ga. App. 825, 826, 611 S.E.2d 103, 104 (2005). Here, the Settlement Agreement is unambiguous because, as will be explained, it is only capable of one reasonable interpretation.

3. Interpretation of the Engelhard Settlement Agreement

As will be fully explained below, the terms of the Engelhard Settlement Agreement clearly and unambiguously require Engelhard to provide employment benefits to Edmond until April 16, 2023, which is a period of 226 months from Edmond's settlement with UNUM on June 16, 2004.

First, the commencement date for benefits under the Engelhard Settlement Agreement is June 16, 2004. According to the Engelhard Settlement Agreement, ". . . in

the event of a settlement" with UNUM and the other Lawsuit I defendants for a lump sum payment, ". . . ENGELHARD shall reinstate the aforementioned employee benefits from the **date of the settlement** . . . ." (emphasis added). Edmond and UNUM executed the UNUM settlement agreement on June 16, 2004. Although only executed by Edmond and UNUM, the settlement agreement nevertheless released all remaining Lawsuit I defendants. Therefore, Engelhard's obligation to begin providing employment benefits under the Engelhard Settlement Agreement commenced on June 16, 2004.

Next, the duration period, that is, the period of time that Engelhard is obligated to provide employment benefits, is determined by dividing "the total amount of the settlement paid by any of the defendants cumulatively," the dividend, by "the monthly benefit amount to which EDMOND would have been entitled to [sic] under the LTD Plan had benefits not been terminated," the divisor.

As to the dividend, the Settlement Agreement is clear that it is to be $39,000. The dividend, again, is the amount of the UNUM Settlement. In the UNUM Settlement Agreement, the parties state that the Lawsuit I defendants "paid to Edmond sums totaling $65,000.00," which represents "a settlement of Edmond's claim for disability benefits from December 7, 2001 through November 22, 2023." However, only $39,000 of that sum was paid to Edmond for disability benefits. In his Amended Complaint in Lawsuit I, Edmond had specifically asked for an award of attorney's fees under 29 U.S.C. § 1132(g)(1), which authorizes attorney's fees in ERISA cases. This was a claim over and above his disability claims. Under the UNUM Settlement Agreement, the Lawsuit I defendants agreed to pay Edmond's attorney a separate attorney's fee payable directly to Edmond's attorney. Therefore Edmond's actual lump sum

settlement amount, i.e., the amount payable directly to Edmond, was $39,000. This, then, is the dividend, not $65,000.[2]

As to the divisor, the Engelhard Settlement Agreement is clear that it is to be calculated according to the LTD Plan; so calculated, the monthly benefit amount is $172.43. The Settlement Agreement states that the monthly benefit is the "amount to which EDMOND would have been entitled to [sic] under the LTD Plan had benefits not been terminated." Clearly the divisor is to be calculated as would the "monthly benefit" under the LTD plan, which is incorporated by reference into the Settlement Agreement. According to Georgia law, the language used is sufficient to incorporate the LTD plan; under Georgia law, "incorporation by reference is generally effective to accomplish its intended purposes where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *Dan J. Sheehan Co. v. Ceramic Technics, LTD*, 269 Ga. App. 773, 777, 605 S.E.2d 375, 379 (2005). Here, the LTD plan's method for calculating the monthly benefit has a reasonably clear and ascertainable meaning—in fact, the LTD plan provides explicit instructions for calculating the monthly benefit. Calculating the monthly benefit amount according to the LTD plan, the divisor is to be $172.43.

---

[2] While not necessary for the above ruling, it is worth noting that under this ruling and the Court's ruling with respect to the monthly benefit amount, Edmond's benefits will expire just shy of his 65 birthday. Under the LTD plan, Edmond would only be eligible to receive benefits until he turns 65. Moreover, Edmond's settlement with UNUM was for benefits up to his 65 birthday ("a settlement of Edmond's claim for disability benefits from December 7, 2001 through November 22, 2023"). So this Court's ruling effects the intent of UNUM and Edmond to provide Edmond benefits until he turns 65.
    Engelhard's arguments, however, do not. Under Engelhard's argument with respect to the monthly benefit amount, Edmond would only receive employee benefits for 38 months. Under Engelhard's argument regarding the dividend and this Court's ruling on the monthly benefit amount (this would mean that to determine the duration of benefits this Court would divide $65,000 by $172.43), Edmond would receive benefits for 377 months, or until he turns 77.

Although not strictly necessary for the Court's ruling, it is worth addressing one of Engelhard's additional arguments for its position. Engelhard argues that the "monthly benefit amount" is the amount Edmond had been receiving prior to the termination of benefits because when Edmond was receiving benefits under the LTD plan his monthly benefit was not offset by his SSDI benefit. Engelhard is correct that at the time Edmond was receiving LTD benefits he was not receiving SSDI payments. In fact, Edmond did not even become eligible for SSDI benefits until after UNUM and Engelhard had terminated his LTD benefits. Why, then, should the monthly benefit include an SSDI offset if this was not the case when Edmond was receiving benefits? There are two answers. First, the clear and unambiguous language of the Engelhard Settlement Agreement requires that SSDI benefits be subtracted in determining the monthly benefit amount. Edmond was entitled to SSDI benefits retroactive to the time when he *was* receiving LTD benefits, therefore, the SSDI benefits should be included in the calculation.

Second, the only reason that Edmond received the full benefit of $1,724.32 was because Edmond signed a reimbursement agreement pursuant to the LTD plan. In this agreement, Edmond agreed to pay back to UNUM any SSDI benefit he later received. If Edmond had not signed this agreement, UNUM was entitled to estimate what Edmond's SSDI benefits would be and deduct that amount from his monthly benefit check. Thus, Engelhard's assertion that this Court should use the amount Edmond actually received to calculate his monthly benefit amount is unfair for two reasons. First, the only reason Edmond was able to receive monthly benefits as high as $1,724.32 was because he agreed to reimburse UNUM, otherwise UNUM could have estimated his SSDI benefits and subtracted them from Edmond's monthly benefit. So while Edmond

was receiving $1,724.32 a month from UNUM, this figure was only provisional. Second, $1,724.32 does not reflect the true amount of Edmond's benefits. Under the terms of the reimbursement agreement, UNUM is arguably entitled to compensation from Edmond for the amount UNUM paid over what he was otherwise entitled to due to the retroactive SSDI benefits. In other words, the monthly benefit amount under either Engelhard's argument or Edmond's argument comes to the same number because, having been retroactively eligible and retroactively compensated for SSDI benefits, Edmond should only be entitled to keep $172.43 a month under the LTD plan after he reimburses UNUM.

## III. CONCLUSION

As has been shown above, there are no issues of material fact and Edmond is entitled to judgment as a matter of law. The clear and unambiguous language of the Engelhard Settlement Agreement requires Engelhard to provide employee benefits to Edmond for 226 Months from June 16, 2004 to April 16, 2023. Therefore, the Plaintiffs' Motion (Doc. 36) is **GRANTED** in part and **DENIED** in part, and the Defendant's Motion (Doc. 40) is **DENIED**.

In his Motion, the Plaintiff asks for (i) a declaration that the term "monthly benefit" in the Engelhard Settlement Agreement has the same meanings as the definition of "monthly benefit in the UNUM LTD Policy; (ii) a declaration that the monthly benefit amount to which Edmond would have been entitled under the plan is $172.43; (iii) specific performance of the Engelhard Settlement Agreement; (iv) judgment against Engelhard Corporation for such sums to Plaintiffs to provide restitution and equitable relief; (v) pre-judgment and post-judgment interest; (vi) attorney's fees under 29 U.S.C. § 1132(g); and (vii) any legal or equitable relief available to the Plaintiffs.

The Plaintiffs' requests (i) and (ii) for declaratory relief and (iii) for specific performance are **GRANTED**. The Court makes no ruling with respect to the remainder of the Plaintiffs' requests—i.e., (iv) for judgment for sums to provide restitution and equitable relief to the Plaintiffs, (v) for interest, (vi) for attorney's fees and (vii) for other legal and equitable relief—because the parties did not address these issues in their briefs. In its motion, the Plaintiffs requested the opportunity to submit additional briefs on these awards. That request is **GRANTED**. The Plaintiffs shall submit their brief in support of items (iv) through (vii) within 21 days after the filing of this order. The Defendant shall have 21 days after service of the Plaintiffs' brief to file its response brief. The Plaintiffs will then have 14 days after service of the Defendant's response to file their reply, if any. The Plaintiffs' initial brief and the Defendant's response brief are limited in length to ten pages, while the Plaintiffs' reply brief is limited to five. Only with regard to these specific briefs, Local Rule 6.2, which provides for a 14-day extension by the clerk of the court, is inapplicable.

**SO ORDERED**, this the 30th day of September, 2010.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT

jch